United States District Court
Southern District of Texas
**ENTERED**
May 30, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| CF TRADE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:25-CV-00214 |
| | § | |
| DUSE EXPORTS, LLC and | § | |
| IRMA DUARTE, | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant CF Trade, LLC's ("CF Trade") Motion for a Preliminary Injunction. (Dkt. No. 4). After considering the Motion, the supporting memorandum and exhibits, and the hearing held on May 28, 2025, the Court **GRANTS** the Motion.

## I.   BACKGROUND

This is a Perishable Agricultural Commodities Act ("PACA") case. Duse Exports, LLC ("Duse Exports") is engaged in the business of buying and selling perishable agricultural commodities under a PACA license. (Dkt. No. 1 at 2); (Dkt. No. 1-1 at 2). Irma Duarte is an officer, director, member, or shareholder of Duse Exports, and the individual in charge of its business undertakings. (*Id.* at 9). CF Trade is an invoice-factoring company that operates as an assignee of accounts receivable from produce sellers, providing business funding and financial services in the produce-distribution chain. (Dkt. No. 1 at 1).

In January 2025, nonparty Mayan Farmers Produce, LLC ("Mayan") agreed to sell three loads of perishable produce to Duse Exports for a total of $158,592.03. (Dkt. No. 1-2). The invoices for the orders contain the required PACA notices. (*Id.* at 5–6, 11–12, 17–18). As part of the invoice-factoring arrangement for each transaction, Duarte signed an "Irrevocable Acceptance of Goods, Acknowledgment and Waiver" acknowledging that Duse Exports "has received and unconditionally accepts all of the goods sold," that Mayan has "provided [Duse Exports] with the products and/or services relating to the Accounts Receivable," and that the "transfer of title to and ownership of all goods sold has occurred." (*Id.* at 3–4, 9–10, 15–16). Despite these representations, Duarte claims that Mayan never delivered the produce. (Dkt. No. 20 at 1–2). Mayan assigned its rights in the accounts receivable from these transactions—including its rights as a PACA beneficiary—to CF Trade in exchange for an advance on its account receivables. (Dkt. No. 1-2 at 7, 13, 19).

CF Trade alleges that Duse Exports accepted the produce but failed to pay the invoiced amounts. (Dkt. No. 1 at 3–4). CF Trade sued Duse Export and Duarte on May 9, 2025, bringing claims for violation of PACA's trust provisions and breach of contract, among others. (Dkt. No. 1 at 4–12). At the same time, CF Trade moved for a temporary restraining order and preliminary injunction. (Dkt. No. 4). The Court entered a temporary restraining order, (Dkt. No. 12), and set a hearing on the preliminary injunction on May 28, 2025, in accordance with Federal Rule of Civil Procedure 65(b)(3). All Parties appeared at the hearing represented by counsel, where the Court accepted evidence and heard arguments.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) permits the issuance of a preliminary injunction "only on notice to the adverse party." Fed. R. Civ. P. 65(a). The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). There are four requirements for a preliminary injunction in the Fifth Circuit. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). The "extraordinary relief" of a preliminary injunction may only issue where:

(1) there is a substantial likelihood that the movant will succeed on the merits;

(2) there is a substantial threat that irreparable harm will result if the injunction is not granted;

(3) the threatened injury outweighs the threatened harm to the defendant[s]; and

(4) the granting of the preliminary injunction will not disserve the public interest.

*Id.* Each of these elements is necessary for a preliminary injunction; "if the movant does not succeed in carrying its burden on any one of the four prerequisites, a preliminary injunction may not issue." *Enter. Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

## III. DISCUSSION

The Court finds that CF Trade has satisfied all four requirements for a preliminary injunction.

A. **SUCCESS ON THE MERITS**

1. **PACA Claims**

CF Trade alleges that Duse Exports and Duarte violated PACA's trust provisions. (Dkt. No. 1 at 5–7) (citing 7 U.S.C. § 499e). PACA creates a trust that requires produce buyers to hold their produce-related assets as fiduciaries until full payment is made to produce sellers. 7 U.S.C. § 499e(c)(2). The trust automatically arises when a dealer accepts the goods, as long as the seller complies with the notice requirements set forth in 7 U.S.C. § 499e(c) and 7 C.F.R. § 46.46(f). *See* 7 U.S.C. § 499e(c)(2). Congress added the PACA trust provisions in 1984 to provide greater protection to produce sellers, ensuring that they have priority over other creditors to recover payment for their perishable goods. *See Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995) (explaining the rationale behind the 1984 PACA amendments); *In re Delta Produce, L.P.*, 845 F.3d 609, 612 (5th Cir. 2016) ("The short lifespan of produce makes it risky business.").

To recover under PACA's trust provisions, a "[p]laintiff must establish that it is a trust beneficiary, and that a PACA trust was formed." *Paisano Cap. SA de CV v. 23 Tex. Produce, Inc.*, No. 3:19-CV-00852, 2019 WL 3239152, at *3 (N.D. Tex. July 18, 2019). To show that a PACA trust was formed, a plaintiff must show by a preponderance of the evidence that:

(1) the goods sold were perishable agricultural commodities;
(2) the purchaser of the perishable agricultural commodities was a commission merchant, a dealer, or broker;
(3) the transaction occurred in interstate or foreign commerce;

4

>  (4)  full payment on the transaction has not been received by the supplier, seller, or agent;
>
>  (5)  the seller or supplier preserved its trust rights by giving written notice to the purchaser; and
>
>  (6)  the time allotted for acceptance of payment did not exceed the maximum amount prescribed by PACA.

See *Mirasoles Produce USA, LLC v. TALYGAP Produce, Inc.*, No. 7:22-CV-00055, 2022 WL 1165151, at *3 (S.D. Tex. Apr. 20, 2022) (collecting cases for these elements).

At the hearing, the Parties agreed that—subject to Duse Exports's allegation that it never received the produce—only element five is in dispute. But the record shows that Mayan gave written notice of its PACA rights to Duse Exports in the invoices. (*Id.* at 5–6, 11–12, 17–18). Accordingly, the Court finds that the record supports a likelihood of success on each element.[1]

Turning to Duse Exports's primary defense—that Mayan never delivered the produce—the Court finds that, based on the current record, CF Trade has shown a likelihood of success of proving either that (1) the produce was delivered or (2) Duse Exports is equitably estopped from denying delivery based on the "Irrevocable Acceptance of Goods, Acknowledgment and Waiver" in the factoring agreements. (Dkt. No. 1-2 at 3–4, 9–10, 15–16).

First, the preponderance of the available evidence suggests that actual delivery occurred. WhatsApp communications between CF Trade and Duarte spanning from

---

[1] The Court also finds that the evidence in the record supports a likelihood of success on each of these six elements separate and apart from the Parties' agreement that certain elements are not in dispute.

September 2024 through April 2025 reveal an ongoing business relationship in which Duse Export regularly received invoices, made payments on prior shipments, and promised payment on outstanding invoices without ever disputing delivery. (Dkt. No. 6 at 36–48). When CF Trade contacted Duarte about the overdue payments for the three transactions in question, she responded by apologizing that she had been busy with doctors but promised that payment would come shortly—never disputing that the goods were delivered. (Dkt. No. 6 at 48). When pressed again ten days later, Duarte responded that she was "working on it." (*Id.*). At the May 28, 2025, hearing, Duarte presented only her testimony that she had never received the produce.

Second, even if delivery is disputed, Duarte signed "Irrevocable Acceptance of Goods, Acknowledgment and Waiver" documents for each transaction, acknowledging—in various terms—that Duse Exports had in fact received all of the produce. (*Id.* at 3–4, 9–10, 15–16). The agreements even state that Duse Exports "shall be responsible to resolve directly with [Mayan] any form of dispute including, for example: shipment, delivery, quality, or condition of any of the goods sold." (Dkt. No. 1-2 at 4, 10, 16). The agreements state that "CF Trade, LLC shall be entitled to rely upon" these assurances. (*Id.*). And the record supports a likelihood of CF Trade showing that it did in fact rely on these assurances before advancing Mayan money on its accounts receivable. These signed acknowledgments support a theory of equitable estoppel, preventing Duse Export from now claiming the goods were never delivered. *See Florida Dep't of Ins. v. Chase Bank*, 274 F.3d 924, 933 (5th Cir. 2001) ("[E]stoppel involves the reasonable reliance of one party on the conduct or statements of another party. If the

6

relying party suffers harm as a result of its reliance, the law estops the other party from disavowing its earlier conduct or statements." (quoting *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins.*, 174 F.3d 653, 660 (5th Cir. 1999)).

### 2. **Breach-of-Contract Claim**

As for CF Trade's contract claim, "[t]he elements of a breach of contract claim are (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied) (quotations omitted).[2]

The Court finds that CF Trade is likely to succeed on its breach-of-contract claim as the assignee Mayan's rights. The record supports a likelihood of CF Trade proving (1) the existence of an agreement to buy fresh produce on credit; (2) that Mayan delivered the produce or that Duse Exports is estopped from denying delivery; and (3) that Duse Exports failed to pay the amount due on the accounts receivable. These facts, if proved, establish a breach of contract. *See Mirasoles Produce USA, LLC*, 2022 WL 1165151, at *4.

### B. IMMEDIATE AND IRREPARABLE INJURY AND THE BALANCE OF HARMS

The Court has already found that the threatened harm to Plaintiff of dissolution of the PACA trust assets is substantial and irreparable and outweighs the threatened harm to Defendants. (Dkt. No. 12 at 6). And the record indicates that Duse Exports's finances are potentially unstable, supporting the need for protection of the PACA trust assets.

---

[2] As there are no facts to implicate any forum other than Texas, the Court assumes that Texas contract law applies to the dispute.

(Dkt. No. 5 at 11); (Dkt. No. 6 at 1–4).  CF Trade's attorney contacted Duse Exports on April 8, 2025, demanding payment of the outstanding balance, and no one disputes that Duse Exports has not paid the amount due.  (Dkt. No. 4-1 at 4–6).  Additionally, Duse Exports and Duarte are already obligated by PACA to maintain the subject funds in trust, "so a preliminary injunction would not require Defendants to do anything more than what they are already legally required to do."  *Great Union Mktg., LLC v. Twin Bros. Produce, LLC*, No. 7:23-CV-00043, 2023 WL 5687034, at *4 (S.D. Tex. July 25, 2023).

Accordingly, CF Trade has satisfied the second and third requirements for a preliminary injunction.

        **C.**      **THE PUBLIC INTEREST**

"Congress has specifically provided that preservation of the trust assets for the benefit of sellers of produce is in the public interest.  Congress has specifically provided that protecting the interest of produce sellers and ensuring they are paid for their produce is in the public interest. It is not for this Court to question the judgment of Congress."  *Sanzone Brokerage, Inc. v. J&M Produce Sales, Inc.*, 547 F.Supp.2d 599, 603 (N.D. Tex. 2008); *see also* 7 U.S.C. § 499e(c)(1) (stating that PACA was "intended to remedy [the] burden on commerce in perishable agricultural commodities and to protect the public interest").  The Court finds that the public interest is not disserved by a preliminary injunction in this case.

        **D.**      **BOND**

Rule 65(c) generally requires courts to obtain security "in an amount that the court considers proper" from the movant prior to issuing a preliminary injunction. Fed. R. Civ.

P. 65(c); *A.T.N. Indus., Inc. v. Gross*, 632 F.App'x 185, 192 (5th Cir. 2015).  The Court has already received a $1,000.00 bond from CF Trade, (Dkt. No. 14), and courts generally do not require substantial security (or sometimes any security) in PACA cases.  *See Rio Vista Ventures, LLC v. Valvilla Produce, LLC*, 7:20-cv-00325, 2020 WL 8300522, at *4 (S.D. Tex. Nov. 4, 2020); *Great Union Mktg., LLC*, 2023 WL 5687034, at *4.  Accordingly, the Court agrees that the PACA trust assets may serve as CF Trade's bond and will not require any additional security.  *See Great Union Mktg., LLC*, 2023 WL 5687034, at *4.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** CF Trade's Motion for a Preliminary Injunction.  (Dkt. No. 4).

It is therefore **ORDERED** that Defendants are preliminarily enjoined during the pendency of this action from engaging in, committing, or performing directly or indirectly, any of the following acts:

1. Taking any action whatsoever which causes, has the effect of causing, or which otherwise dissipates Plaintiff's beneficial interests in the PACA trust assets;

2. Taking any other action whatsoever which violates 7 U.S.C. §499e(c)(1)-(4) or 7 U.S.C. §499b(4);

3. Transferring, withdrawing, or in any other manner removing PACA trust assets from Defendants' banking accounts, including funds on deposit in banking accounts held by or on behalf of Defendants at any and all banking institutions.

It is further **ORDERED** that pending a final determination in this action, Defendants shall:

4. Deposit all PACA trust assets, in an amount equal to the principal amount due to Plaintiff. All said payments shall be deposited into interest bearing subaccount of Plaintiff's counsel's trust account at Frost Bank, San Antonio, Texas, and all such funds shall be held therein pending further order of this Court.

It is further **ORDERED** that in the event that Defendants lack sufficient funds to promptly deposit the total sum heretofore determined, Defendants shall:

5. Deposit Transfer any and all monies in their bank accounts or on hand that are derived from or commingled with PACA trust assets to the Court or into the trust account opened by Plaintiff's attorneys.

6. Endorse and deliver to Plaintiff's counsel, within 48 hours of receipt, any checks made payable to Defendants that constitute PACA trust assets, including checks representing payment for sales of inventory. Defendants shall also deliver to Plaintiff's counsel, within 48 hours of receipt, any cash assets of the PACA trust in their possession or control. This requirement applies to all trust assets currently held by Defendants and any trust assets Defendants receive after entry of this Order.

It is further **ORDERED** that no additional bond shall be required to be posted by Plaintiff before the Preliminary Injunction is effective. The Court finds that the above injunctive relief is appropriate to protect the PACA trust assets at this time.[3]

It is SO ORDERED.

---

[3] While CF Trade provided thorough briefing on its entitlement to injunctive relief, CF Trade left the Court with little guidance about the appropriate scope of injunctive relief. A "court must narrowly tailor an injunction to remedy the specific action which gives rise to the order." *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004). CF Trade cites no caselaw to support the full scope of injunctive relief requested in its proposed preliminary injunction. (Dkt. No. 5-2). Accordingly, the Court limits the scope of the preliminary injunction to what it finds necessary to preserve PACA trust assets. Should CF Trade believe that further injunctive relief is warranted, it may move to modify this preliminary injunction **with supporting briefing**.

Signed on May 30, 2025.

                                                  **DREW B. TIPTON**
                                       **UNITED STATES DISTRICT JUDGE**